Case 5:25-cr-00022-JHY-JCH   Document 41   Filed 03/06/26   Page 1 of 11
Pageid#: 223

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
March 06, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | |
| v. ) | |
| ) | |
| Soufiane Bougria, ) | Case No. 5:25-cr-00022 |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter is before the court on two pretrial evidentiary motions. First, the United States noticed its intent to introduce at trial "other acts" evidence as to Defendant Soufiane Bougria under Rule 404(b) of the Federal Rules of Evidence. (Dkt. 27.) Second, Bougria filed a motion in limine to exclude certain testimony from the United States's noticed expert witnesses. (Dkt. 31.)

For the following reasons, the court will overrule Bougria's objection to the government's Rule 404(b) notice and will grant in part and deny in part Bougria's motion in limine.

### I. Background

Bougria is charged with assault in the special maritime and territorial jurisdiction of the United States in violation of 18 U.S.C. § 113(a)(6) and 18 U.S.C. § 113(a)(7). (Dkt. 5.) The government alleges that on or between August 24 and August 25, 2025, Bougria assaulted his dating partner with a hatchet in Shenandoah National Park. (Id.) Bougria has indicated that

the alleged victim of the assault ("Victim 1") denies that Bougria assaulted her and maintains that her injuries were the result of an accident.  (Dkt. 28 at 1.)

On January 15, 2026, the government submitted its intent to offer several expert witnesses: Dr. Ankur Mehindru, Dr. Raveena Chhabria, Dr. Alexander Croog, and Kathryn Laughon, PhD, RN, FAAN, SANE-A/SANE-P.  (Dkt. 25.)  Drs. Mehindru, Chhabria, and Croog treated Victim 1 at various stages after she sustained injuries in Shenandoah National Park.  (*Id.* at 1.)  The government anticipates that these doctors will testify regarding their treatment of Victim 1 and "the types of injuries and severity of the injuries Victim 1 suffered."  (*Id.* at 3–5.)  According to the government, Dr. Croog will also testify on "the surgery he performed on Victim 1, and the expected near- and long-term impacts of those injuries on Victim 1."  (*Id.* at 5.)

The government states that Dr. Laughon would testify on "general dynamics of intimate partner violent relationships," as well as "power and control tactics"—such as intimidation, emotional abuse, blame, and anger—"commonly used by a controlling partner in an intimate partner violent relationship."  (Dkt. 25 at 6–7.)

On January 30, 2026, the government submitted its notice of intent to introduce evidence under Rule 404(b), seeking to admit evidence of a May 2025 physical altercation between Bougria and Victim 1 in Fairfax, Virginia.  (Dkt. 27.)  The government seeks to call a witness to testify that he saw Bougria pull Victim 1's hair and heard Victim 1 yell for help.  (*Id.* at 5.)  Bougria objected to the notice.  (Dkt. 28.)

On February 8, 2026, Bougria filed his motion in limine to exclude certain aspects of the expert testimony described above. (Dkt. 31.) The government opposed the motion. (Dkt. 33.)

## II.     Standards

### A. Motion in Limine

Motions in limine are a well-recognized judicial practice. *See, e.g.*, *Ohler v. United States*, 529 U.S. 753, 758 (2000). The court's power to rule on motions in limine stems from its "inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Regardless of its initial decision on a motion in limine, a court may revisit the issue at trial. *Luce*, 469 U.S. at 41–42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). "The Supreme Court has recognized that a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce*, 469 U.S. at 41–42).

### B. Applicable Rules

Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, evidence of prior bad acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* 404(b)(2). The Fourth Circuit has explained that "Rule 404(b) is an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." *United*

*States v. Lespier*, 725 F.3d 437, 448 (4th Cir. 2013) (quoting *United States v. Rooks*, 596 F.3d 204, 211 (4th Cir. 2010)).

Rule 16 of the Federal Rules of Criminal Procedure obliges the government to notice "a complete statement of all opinions the expert will provide." Fed. R. Crim. P. 16 advisory committee's note (2022 Amendments). This includes "a complete statement of all opinions that the government will elicit from the witness . . . ; the bases and reasons for them; the witness's qualifications, including a list of all publications authored in the previous 10 years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Fed. R. Crim. P. 16(a)(1)(G)(iii).

### III. Analysis

#### A. Evidence of Bougria's prior acts is admissible to prove motive, intent, identity and lack of accident.

The Fourth Circuit has formulated a four-part test for determining whether evidence may be admitted under Rule 404(b): "(1) the prior-act evidence must be relevant to an issue other than character, such as intent; (2) it must be necessary to prove an element of the crime charged; (3) it must be reliable; and (4) . . . its probative value must not be substantially outweighed by its prejudicial nature." *United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997) (cleaned up).

The court concludes that the May 2025 prior act satisfies all four *Queen* factors and is admissible with an appropriate limiting instruction.

1. <u>The evidence is relevant to an issue besides character.</u>

The government argues that the May 2025 incident is probative of Bougria's motive, intent, identity, and lack of accident. (Dkt. 27 at 6–7.) Bougria responds that the May 2025

incident is "quintessential character evidence" that the government offers to show that Bougria "abuses women *generally*." (Dkt. 28 at 6.)

The court agrees with the government. Courts have concluded that "[o]ther acts of domestic violence involving the same victim are textbook examples of evidence admissible under Rule 404(b)." *United States v. Berckmann*, 971 F.3d 999, 1002 (9th Cir. 2020). This prior act evidence may "illustrate the 'history of [the] relationship' between the defendant and victim, which speaks to a defendant's intent." *Id.*; *United States v. Johnson*, 860 F.3d 1133, 1142 (8th Cir. 2017); *see also United States v. Faulls*, 821 F.3d 502, 508–09 (4th Cir. 2016). As the Fourth Circuit has recognized, evidence of "[r]ising animosity" between a defendant and the same victim "could easily provide the motive for an assault." *United States v. Lewis*, 780 F.2d 1140, 1142 (4th Cir. 1986). For these reasons, evidence of the May 2025 incident may be probative of Bougria's motive, intent, identity, and the lack of accident—not merely to Bougria's general character.

2. <u>The evidence is necessary.</u>

For purposes of Rule 404(b), evidence of other crimes or bad acts is necessary if it is an "essential part of the crimes on trial, or where it furnishes part of the context of the crime." *Queen*, 132 F.3d at 998; *see also Faulls*, 821 F.3d at 508.

In both of the indictment's two counts, Bougria is charged with assault. "Although 'assault' under [federal statute] is not statutorily defined, courts have uniformly recognized that various federal statutes criminalizing 'assault' incorporate the long-established common law definition of that term." *United States v. Bryant*, 949 F.3d 168, 180 (4th Cir. 2020) (cleaned up). "At common law, an assault is committed when a person willfully attempts to inflict injury on

another, or threatens to inflict injury on another, coupled with an apparent present ability to do so, causing a reasonable apprehension of immediate bodily harm." *Id.*

In other words, the government's case may rest on showing that Bougria willfully attempted to inflict injury on Victim 1. Because, as just discussed, the May 2025 incident is probative of Bougria's intent and motive for the charged conduct, it may be necessary to prove "an essential part of the crime[] on trial" and to provide "part of the context of the crime." *Queen*, 132 F.3d at 998.

3. <u>The evidence is reliable.</u>

Bougria argues that the evidence is not reliable because it was evidently insufficient to establish probable cause to arrest him. (Dkt. 28 at 6.) The government asserts that the prior act evidence is reliable because it comes from the testimony of direct witnesses and participants. (Dkt. 27 at 9.)

"Evidence is reliable for purposes of Rule 404(b) unless it is so preposterous that it could not be believed by a rational and properly instructed juror." *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2006) (cleaned up). The fact that Fairfax County police declined to arrest Bougria does not render the eyewitness account unreliable. Bougria offers no argument that the witness's testimony is so preposterous that it would be unbelievable to a rational juror. Bougria's arguments relate to the weight of the evidence, which he is free to probe on cross-examination and argument.

4. <u>The evidence's probative value is not substantially outweighed by unfair prejudice.</u>

Finally, Bougria argues that the probative value of this prior act is substantially outweighed by a danger of unfair prejudice. (Dkt. 28 at 6–7.) "Evidence is unfairly prejudicial

and thus should be excluded under Rule 403 when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006) (cleaned up).

But prejudice alone is not enough. Instead, "[e]vidence may be excluded under Rule 403 only if the evidence is *unfairly* prejudicial and, even then, only if the unfair prejudice *substantially* outweighs the probative value of the evidence." *Siegel*, 536 F.3d at 319 (emphasis in original). While this evidence may prejudice Bougria, he has not shown it inflicts unfair prejudice that substantially outweighs the evidence's probative value. First, the prior-act evidence "d[oes] not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged." *United States v. Byers*, 649 F.3d 197, 210 (4th Cir. 2011) (cleaned up). More importantly, the court will provide careful limiting instructions to the jury to mitigate any risk of unfair prejudice and remind the jury that the prior act evidence is not to be considered to prove Bougria's character or propensity to commit the charged crime. *United States v. White*, 405 F.3d 208, 213 (4th Cir. 2005) ("[A]ny risk of such prejudice was mitigated by a limiting instruction from the district court clarifying the issues for which the jury could properly consider [Rule 404(b)] evidence.").

**B. Bougria's motion in limine to limit the United States's expert testimony will be granted in part.**

1. <u>Dr. Laughon's testimony will not be allowed at this time, as the government has not shown that it will be relevant or helpful.</u>

Bougria argues, among other things, that Dr. Laughon's testimony is irrelevant and unduly prejudicial. (Dkt. 31 at 7.)

The government seeks to introduce Dr. Laughon as a "blind" witness, which means that she would testify without interviewing the victim or reviewing the facts of the case. The federal rules allow for such expert testimony. *See SAS Inst., Inc. v. World Programming Ltd.,* 125 F. Supp. 3d 579, 587 (E.D.N.C. 2015), *aff'd*, 874 F.3d 370 (4th Cir. 2017); Fed. R. Evid. 702 advisory committee's note (2000) ("Yet it might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case.").

However, because Dr. Laughon's testimony "will talk about generalities about domestic or intimate partner violence[,] [a]t this time, the Court does not find her testimony to be helpful or relevant to the charges before the Court." *United States v. Zacherle*, No. 2:24-CR-0044-TOR, 2024 WL 3626601, at *1 (E.D. Wash. Aug. 1, 2024). Other courts have prevented such witnesses from "provid[ing] broad expert opinions as to typical behaviors of an abuser and/or victim that have no bearing on the facts at issue in this case." *United States v. Dakota Wayne Campus*, No. 22-CR-0064-CVE, 2022 WL 3756512, at *4 (N.D. Okla. Aug. 30, 2022). Such "blind expert testimony that encompasses a far broader range of conduct than what is at issue here may be prejudicial and confusing to the jury." *Id.*

At this time, then, the court will not allow Dr. Laughon to testify. The court may reconsider allowing Dr. Laughon to testify depending on how trial proceeds.

2. <u>Drs. Chhabria, Mehindru, and Croog's testimony will be limited in part.</u>

Bougria makes three arguments for the exclusion of these doctors' testimony.

First, Bougria argues that Dr. Croog's notice was submitted late. (Dkt. 31 at 7.) However, the court granted the government an extension through February 23, 2026, to

update its notice. (Dkt. 26.) Dr. Croog's CV and signed disclosure were timely provided within the court's extended deadline. (Dkt. 37.)

Second, Bougria argues that the doctors' testimony is unnecessary to show that Victim 1's wound was serious, as photograph evidence is sufficient to establish this. (Dkt. 31 at 7.) The court disagrees. The doctors' testimony may go beyond what photographs can convey. Relatedly, Bougria argues that the doctors' testimony would be cumulative and waste time. (*Id.* at 8.) The court again disagrees. Each doctor treated Victim 1 at different stages of her recovery. Dr. Mehindru treated Victim 1 when she arrived at the emergency room; Dr. Chhabria treated Victim 1 after she was transferred for a higher level of trauma care; and Dr. Croog performed surgery on Victim 1's arm and wrist. Each doctor's treatment at each stage—and the escalation of treatment between them—is relevant to show the severity of Victim 1's injury. Thus, the court is unwilling, *ex ante*, to exclude this testimony. But to the extent Bougria believes the evidence becomes cumulative during trial, Bougria may object at that time.

Third, Bougria seeks to preclude these doctors from testifying that Victim 1 experienced a "defensive wound" or a wound caused by "defensive reactions to an assault." (*Id.*) Bougria argues that (A) this testimony would be prejudicial to Bougria and (B) the government did not notice these experts to provide causation testimony. (*Id.*) The government responds that the doctors will not testify that Bougria assaulted the victim, but the doctors may "opine, based on their training and experience treating patients, as to how a laceration of the type Victim 1 presented may have been caused—or not caused—and whether it is consistent—or inconsistent—with certain types of force and contact." (Dkt. 33 at 7.)

The court will grant this aspect of Bougria's motion in part. Generally, "a treating physician need not be designated as an expert and may testify as a lay witness to personal observations stemming from his course of treatment of a plaintiff." *Roop v. Desousa*, 660 F. Supp. 3d 477, 484 (E.D. Va. 2023). But "a physician's assessment of the *cause* of an injury is expert testimony." *United States v. Urena*, 659 F.3d 903, 908 (9th Cir. 2011) (emphasis added); *see also United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005). And to provide expert testimony, a witness must comply with the notice requirements of Rule 16.

The government's notices disclosed that these doctors would testify regarding their treatment of Victim 1 and "the types of injuries and severity of the injuries Victim 1 suffered." (Dkt. 25 at 3–5.) But the notices did not disclose opinions as to causation—that is, how the laceration may have been caused, whether it is consistent with defensive reactions, or whether it is consistent with particular types of force and contact. Nor, even if these opinions had been disclosed, does the notice indicate the "bases and reasons" for them. The government's opposition brief cannot enlarge the scope of what was noticed. Fed. R. Crim. P. 16(a)(1)(G)(iii) (requiring "a complete statement of all opinions" and "the bases and reasons for them").

Accordingly, the treating physicians may testify to what they personally observed and the treatment they provided, including the nature, severity, and type of Victim 1's injuries. However, they may not offer causation opinions—including testimony that Victim 1's wound was a "defensive wound," that it was caused by "defensive reactions to an assault," or that the laceration is "consistent" or "inconsistent" with particular types of force.

### IV. Conclusion

For the foregoing reasons, Bougria's objection to the government's notice of intent to introduce prior act evidence will be overruled. Bougria's motion in limine will be granted in part and denied in part.

An appropriate Order will issue.

**ENTERED** this  6th  day of March, 2026.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE